**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| FRANCISCO PERALTA ZAMORA, | ) | No. CV 13-8955-AS |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM AND OPINION** |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PROCEEDINGS**

On December 4, 2013, Plaintiff Francisco Peralta Zamora filed a Complaint seeking review of the denial of his application for a period of disability, disability insurance benefits, and supplemental security income. (Docket Entry No. 3.) In January 2014, shortly after service of the Complaint, the parties consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 9, 10.) Defendant then filed an Answer to the Complaint and the Administrative Record ("A.R.") on May 2, 2014. (Docket Entry

1

Nos. 12, 13.) On July 24, 2014, the parties filed a Joint Stipulation setting forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 17.) The Court has taken the matter under submission without oral argument, and it is now before the Court for decision. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on September 23, 2009, alleging disability commencing on March 24, 2009. (A.R. 285-93.) Plaintiff alleges physical impairments as the result of a stroke. (Joint Stip. 3.) His main complaint is that he suffers from diplopia, commonly referred to as double vision. (See A.R. 21; Joint Stip. 4.)

After the Commissioner initially denied Plaintiff's claims, Plaintiff requested a de novo hearing before an Administrative Law Judge ("ALJ"). The ALJ, Edward P. Schneeberger, held four hearings on the matter. (A.R. 28-110.) At the first hearing, on February 10, 2011, the ALJ offered Plaintiff resources to obtain counsel. (A.R. 28-37.) Plaintiff obtained counsel and the second hearing was held on June 29, 2011. (A.R. 38-60.) Plaintiff and a vocational expert ("VE"), Freeman Leeth, testified. (Id.) At the end of the hearing, the ALJ ordered Plaintiff to see a psychologist to determine the extent of the damage to Plaintiff's cognitive functioning. (A.R. 57-60.) On January 25, 2012, the ALJ held the third hearing on

this matter, where Plaintiff once again testified along with neurologist Dr. James Haines. (A.R. 92-110.) Based on Dr. Haines' recommendation, the ALJ ordered Plaintiff to see an ophthalmologist to undergo a diplopia filed red lens test. (A.R. 108.) The final hearing was held on August 24, 2012. Plaintiff, VE Irma Bebe, and ophthalmologist Dr. Patrick McCafferty testified at the final hearing. (A.R. 61-91.)

On September 27, 2012, the ALJ issued an unfavorable decision. (A.R. 10-27.) The ALJ found that Plaintiff has severe impairments as a result of a stroke, including headaches, significant right facial weakness, and some right-sided sensory deficits. (A.R. 19.) But the ALJ found that Plaintiff's alleged diplopia is a non-severe impairment. (Id.) The ALJ found that Plaintiff has been prescribed corrective lenses and prisms to improve his double vision, and Plaintiff's alleged level of vision is inconsistent with the degree of pathology. (Id.) In reaching these conclusions, the ALJ made an adverse credibility finding with regard to Plaintiff's allegations of the intensity, persistence, and limiting effects of his physical symptoms. (A.R. 20-22.)

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the non-exertional limitations that he cannot work around unprotected heights or moving machinery. (A.R. 22.) Relying on the testimony of VE Leeth and VE Bebe, the ALJ determined that Plaintiff was able to perform his past relevant work

3

as an assembler, DOT No. 827.684-010, as actually and generally performed. (Id.) Accordingly, the ALJ found that Plaintiff was not disabled under section 216(i) and 223(d) of the Social Security Act. (A.R. 22.)

**PLAINTIFF'S CONTENTION**

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting his testimony. (Joint Stip. 4.)

**STANDARD OF REVIEW**

This court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used proper legal standards. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is more than a scintilla, but less than a preponderance." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). To determine whether substantial evidence supports a finding, "a court must consider [] the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). As a result, "[i]f evidence can reasonably support either affirming or reversing the ALJ's conclusion, [a] court may not substitute its judgment for that of the ALJ." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004).

4

**APPLICABLE LAW**

"The Social Security Act defines disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting 42 U.S.C. § 423(d)(1)(A)). The ALJ follows a five-step, sequential analysis to determine whether a claimant has established disability. 20 C.F.R. § 404.1520.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful employment activity. Id. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as "work that . . . [i]nvolves doing significant and productive physical or mental duties[] and . . . [i]s done (or intended) for pay or profit." Id. §§ 404.1510, 404.1572. If the ALJ determines that the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments that significantly limits her ability to do basic work activities. See id. § 404.1520(a)(4)(ii); see also Webb, 433 F.3d at 686. The "ability to do basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); Webb, 433 F.3d at 686. An impairment is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that

5

has no more than a minimal effect on the ability to do basic work activities." Webb, 433 F.3d at 686.

If the ALJ concludes that a claimant lacks a medically severe impairment, the ALJ must find the claimant not disabled. Id.; 20 C.F.R. § 1520(a)(ii); Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (holding that the ALJ need not consider subsequent steps if there is a finding of "disabled" or "not disabled" at any step).

However, if the ALJ finds that a claimant's impairment is severe, then step three requires the ALJ to evaluate whether the claimant's impairment satisfies certain statutory requirements entitling her to a disability finding. Webb, 433 F.3d at 686. If the impairment does not satisfy the statutory requirements entitling the claimant to a disability finding, the ALJ must determine the claimant's RFC, that is, the ability to do physical and mental work activities on a sustained basis despite limitations from all her impairments. 20 C.F.R. § 416.920(e).

Once the RFC is determined, the ALJ proceeds to step four to assess whether the claimant is able to do any work that she has done in the past, defined as work performed in the last fifteen years prior to the disability onset date. If the ALJ finds that the claimant is not able to do the type of work that she has done in the past or does not have any past relevant work, the ALJ proceeds to step five to determine whether—taking into account the claimant's age, education, work experience, and RFC—there is any other work that

the claimant can do and if so, whether there are a significant number of such jobs in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(iii)–(v). The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Tackett, 180 F.3d at 1098.

## DISCUSSION

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material[1] legal error.

**A.** **The ALJ Did Not Err in Evaluating Plaintiff's Credibility**

Plaintiff challenges the ALJ's credibility assessment of the severity of his symptoms, emphasizing that the evidence proved Plaintiff's significant vision problems. (Joint Stip. 5.) Moreover, while the ALJ properly identified the two-step credibility process, Plaintiff argues that the ALJ "never articulated a *single* reason" for finding Plaintiff not credible. (Id.) But the Court finds that the ALJ properly articulated reasons for finding Plaintiff not credible.

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision will not be reversed for errors that are harmless).

1. <u>Legal Standard</u>

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." *See* <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir. 1990); <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1985). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." <u>Id.</u> at 1036 (internal quotations and citation omitted). If such objective medical evidence exists, the ALJ may not reject the claimant's testimony "simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." <u>Smolen</u>, 80 F.3d at 1282 (emphasis in original). Instead, in finding the claimant's subjective complaints not credible, the ALJ must make "specific, cogent" findings that support the conclusion. <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995) (quoting <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990)). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimaint's testimony must be "clear and convincing." <u>Lester</u>, 81 F.3d at 834.

8

2. <u>Affirmative Evidence of Malingering</u>

Defendant argues that the Court should affirm the ALJ's decision because there is affirmative evidence of malingering in this case. (Joint Stip. 7.) As Defendant points out, the ALJ placed "considerable weight" on the diagnosis from the consultative psychologist, Dr. Ahmad Riahinejad. (A.R. 21-22.) Dr. Riahinejad evaluated Plaintiff's mental impairment as a result of the stroke and included in his diagnosis that Plaintiff was malingering with respect to alleged mental impairment. (A.R. 21, 464-77.) According to Dr. Riahinejad, Plaintiff did not put forth his best effort during diagnostic testing in August 2011. (*Id.*)

Where there is affirmative evidence of malingering, the ALJ is not required to provide "clear and convincing" reasons to reject Plaintiff's subjective statements. <u>See</u> <u>Lester</u>, 81 F.3d at 834. Thus, as Defendants argue, because the ALJ sufficiently explained and placed "considerable weight" on Dr. Riahinejad's opinion that Plaintiff was malingering, this Court's review of the ALJ's credibility findings need not go any further. (Joint Stip. 7; A.R. 21-22.) The Court agrees. While Dr. Riahinejad's examination of Plaintiff was for mental impairment, his diagnosis of malingering is indicative of Plaintiff's overall credibility with respect to his overall symptoms. <u>See</u> <u>Medel v. Colvin</u>, No. EDCV 13-2052-JPR, 2014 WL 6065898, at *8 (C.D. Cal. Nov. 13, 2014) ("[T]he ALJ was entitled to reject Plaintiff's testimony without providing clear and convincing reasons because she specifically found that 'the record

9

includes statements by a doctor suggesting [Plaintiff] was engaged in possible malingering or misrepresentation.").

### 3. Objective Medical Evidence

Nevertheless, even if Dr. Riahinejad's malingering diagnosis is insufficient on its own, the diagnosis along with the ALJ's reliance on additional objective medical evidence suffice as "clear and convincing" reasons for the ALJ's adverse credibility finding.

In addition to Dr. Riahinejad's examination, the ALJ also credited the opinions of nondisability from the other consultative examiners and medical experts. (A.R. 19-22, 73-78, 101-07, 464-77, 511-13.)  Dr. Haines testified to Plaintiff's exertional limitations, which the ALJ stated "put to rest any concerns about lifting and carrying." (A.R. 21, 105.)  With respect to the diplopia, the results of the ophthalmological examination ordered by the ALJ indicated that Plaintiff's alleged level of vision was not consistent with the degree of pathology and that his vision was closer to 20/20. (A.R. 511-13.)  Moreover, Dr. McCafferty testified at the last hearing that Plaintiff's alleged double vision can be offset by head positioning and improved with the use of prisms. (A.R. 21, 73-78.) Dr. McCafferty also testified that patching one eye for periods of time would help correct the problem during work. (Id.)

The Court also notes that the ALJ's credibility findings did not entirely reject Plaintiff's subjective symptoms, particularly with

respect to his vision problems. The RFC incorporates non-exertional limitations supported by the record—Plaintiff cannot work around unprotected heights or moving machinery. (A.R. 22.) Overall, the Court finds that the ALJ rationally interpreted the evidence and articulated "clear and convincing" reasons for discounting the severity of Plaintiff's subjective symptoms including his alleged displopia. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that the opinions of examining doctors and medical experts can serve "as substantial evidence supporting the ALJ's findings with respect to [the claimant's] physical impairment and exertional limitations"); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600-01 (9th Cir. 1999) (holding that a medical expert's testimony constitutes substantial evidence where he provides a specific rationale and narrative justifying his opinion that is consistent with other evidence in the record); Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (holding that the ALJ properly discounted the claimant's allegations where no doctor "expressed the opinion that [the claimant] was totally disabled" or "implied that [the claimant] was precluded from *all* work activity").

**CONCLUSION**

"If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second guessing." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). Here, the ALJ not only provided specific affirmative evidence of malingering, but he also provided specific, clear and convincing reasons for

11

discounting Plaintiff's statements regarding his subjective symptoms. Therefore, the ALJ's decision that Plaintiff failed to establish disability was properly based upon substantial evidence.

**ORDER**

For all of the foregoing reasons, this Court affirms the decision of the Administrative Law Judge.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: December 11, 2014.

                                                _/s/_____
                                                ALKA SAGAR
                                                UNITED STATES MAGISTRATE JUDGE